Electronically Filed
Intermediate Court of Appeals
30694
05-APR-2013
09:07 AM

NO. 30694

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


AOAO QUEEN EMMA GARDENS and TOUCHSTONE PROPERTIES, LTD.,
Appellants-Respondents/Appellees,
v.
TOMMY WAI HUNG MA and SINDY YEE MA,
Appellees-Petitioners/Appellants
and
OFFICE OF ADMINISTRATIVE HEARINGS,
CONDOMINIUM DISPUTE RESOLUTION PILOT PROGRAM,
DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS,
STATE OF HAWAI'I,
Appellees/Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-1257)


MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

This secondary appeal from a decision entered by the State of Hawai'i Department of Commerce and Consumer Affairs (DCCA) arises out of a dispute over the proper interpretation of condominium bylaws raised by Petitioners-Appellants Tommy Wai Hung Ma and Sindy Yee Ma (collectively, the Mas) against their condominium association, Association of Apartment Owners of Queen Emma Gardens (Association), and the condominium's managing agency, Touchstone Properties, Ltd (Touchstone).  The Mas appeal from the Amended Judgment entered August 5, 2010, and the "Order Reversing the Hearings Officer's Findings of Fact, Conclusions of

Law, and Order Granting Appellees/Petitioners Tommy Wai Hung Ma and Sindy Sin Yee Ma's Motion for Summary Judgment/Summary Adjudication Filed on April 13, 2009, Filed on May 13, 2009," entered July 27, 2010 (Order Reversing the DCCA Decision).[1]

The Mas filed a Request for Hearing with the DCCA against Respondents-Appellees Association and Touchstone (collectively, AOAO) alleging that the AOAO violated the condominium bylaws by failing to provide insurance which covered areas reserved for the individual unit owners' exclusive use or occupancy. On a motion for summary judgment, the DCCA found in favor of the Mas, and the AOAO appealed to the circuit court. The circuit court reversed the DCCA Decision, and the Mas appealed to this court. The Mas' primary argument on appeal is that the circuit court erred in reversing the DCCA Decision by improperly interpreting the bylaws - in conjunction with Hawai'i case and statutory law - to limit the AOAO's responsibility to provide insurance coverage for common areas, but not for areas under the Unit owners' exclusive use or occupancy.[2]

## I. BACKGROUND

In October 2002, the Mas purchased unit 637 (the Unit) located on the sixth floor of the Queen Emma Gardens condominium (Queen Emma Gardens). The Association is an association of apartment owners[3] created to represent the apartment owners of the Queen Emma Gardens and is governed by the "By-Laws of the

---

[1] The Honorable Eden Elizabeth Hifo presided over the proceedings relating to a motion to dismiss filed by the Mas. The Honorable Karl K. Sakamoto presided over all other proceedings relevant to this appeal.

[2] The Mas present 14 different points of error on appeal challenging all of the circuit court's Findings of Facts and all but three of its Conclusions of Law. A majority of the Mas' points on appeal relate to the circuit court's interpretation of the Bylaws and subsequent decision to reverse the DCCA's Decision. The Mas also make two unrelated arguments: (1) the circuit court erred in denying their motion to dismiss the AOAO's appeal to the circuit court; and (2) the circuit court violated their rights to due process by adopting the AOAO's misleading Findings of Fact and Conclusions of Law.

[3] The Queen Emma Gardens is a condominium established under and governed by Hawaii Revised Statutes (HRS) chapter 514A (Supp. 2012), the Condominium Property Act. Under HRS § 514A-3 (Supp. 2012), "Association of apartment owners" is defined as "all of the apartment owners acting as a group in accordance with the bylaws and declaration."

2

Association of Apartment Owners of Queen Emma Gardens" (Bylaws).[4]
Touchstone is the managing agent[5] for Queen Emma Gardens. At the
time of the Mas' purchase and all times relevant to this appeal,
Article X, section 2 of the Bylaws provided:

> The Association shall procure and maintain . . .
> policies (collectively, the "Policy") of liability insurance
> to insure the Board, the Association, <u>each apartment owner</u>,
> the Managing Agent, and other employees of the Association
> against claims for personal injury, death, property damage
> and such broader coverage as the Board shall determine
> <u>arising out of the condition of the property</u>[6] <u>or</u>
> <u>activities thereon</u>, under an ISO Commercial General
> Liability form. Said insurance shall provide combined
> single limit coverage of not less than [$2,000,000] or such
> higher limits as the Board may from time to time establish
> with due regard to the then prevailing prudent business
> practice in the state of Hawaii as reasonably adequate for
> the Association's protection. . . .

(Emphases added.) Pursuant to this provision, the AOAO procured
an Insurance Service Organization (ISO) Commercial General
Liability (CGL) policy from Insurance Associates, Inc. with a
coverage limit for bodily injury of up to $1,000,000 for each
occurrence with an aggregate coverage of $2,000,000, and an
umbrella policy providing an additional $5,000,000 of coverage.
Both the CGL and umbrella policies "insured each individual unit
owner of the insured condominium, <u>but only with respect to</u>
<u>liability arising out of the ownership, maintenance or repair of</u>

---

[4]  HRS § 514A-81 (Supp. 2012) requires that the operation of condominium
properties be governed by established bylaws which must be recorded with the
bureau of conveyances or land court.

[5]  "Managing agent" is defined as "any person employed or retained for
the purposes of managing the operation of the property." HRS § 514A-3.

[6]  In the context of HRS chapter 514A:

> "Property" means and includes the land, whether or not
> contiguous and including more than one parcel of land, but
> located within the same vicinity, whether leasehold or in
> fee simple, to the extent of the interest held therein by
> the owner or lessee submitting such interest to the
> condominium property regime, the building or buildings, all
> improvements and all structures thereon, and all easements,
> rights, and appurtenances belonging thereto, and all
> articles of personal property intended for use in connection
> therewith, which have been or are intended to be submitted
> to the regime established by this chapter.

HRS § 514A-3.

3

that portion of the premises which is not reserved for that unit
owner's exclusive use or occupancy." (Emphasis added).

After purchasing the Unit, the Mas leased it to the
existing tenant, Ronald Gomes (Gomes). On the night of December
1, 2005, Gomes' body was discovered on the ground below the Unit.
The Estate of Ronald H. Gomes[7] brought a wrongful death action
(Civil No. 07-1-1292-07) against, among others, the Mas and the
Association. The Mas tendered their defense and indemnity to
Insurance Associates Inc., who subsequently provided a defense
under a reservation of rights theory. Specifically, the insurer
stated:

> The Ma's [sic] are being sued for failing to warn of a
> defective and dangerous condition in and at the unit. The
> defective and dangerous condition is not specified. Given
> the facts of the case, that defective and dangerous
> condition could include the ledge outside the unit. . . .
> To the extent that the ledge was reserved for the Mas'
> exclusive use or occupancy, they would not appear to qualify
> as "insureds" under the Associated policy for the claims
> asserted in the *Gomes* complaint. Accordingly, Associated
> reserves the right to deny coverage of the Ma's [sic] if it
> is determined that the ledge outside their unit was reserved
> for their exclusive use or occupancy.

Eventually the lawsuit was summarily adjudicated in favor of all
named defendants, including the Mas.[8]

While the wrongful death proceedings were ongoing, the
Mas filed a Request for Hearing with the DCCA's Office of
Administrative Hearings.[9] According to their Request for

---

[7] The lawsuit was filed by Phyllis L. Gomes, individually and as Special Administrator of the Estate of Ronald H. Gomes and by Kimberly A.C. Jordao as next friend of Gomes' minor daughter.

[8] Plaintiffs in Civil No. 07-1-1292-07 appealed to this Court in Appeal No. 30036. The Court dismissed the appeal as to claims brought by the Estate of Ronald H. Gomes by Order dated November 10, 2011. After the remaining Plaintiffs-Appellants reached a settlement, the appeal was dismissed in its entirety.

[9] The Mas' Request for Hearing was made pursuant to HRS § 514A-121.5 (Supp. 2005), which provides:

> **§ 514A-121.5 Mediation; condominium management dispute resolution; request for hearing; hearing.** (a) If an apartment owner or the board of directors requests mediation of a dispute involving the interpretation or enforcement of the association of apartment owners' declaration, bylaws, or
> (continued...)

4

Hearing, the Mas discovered during the wrongful death action that the AOAO failed to purchase liability insurance to cover areas of the condominium reserved for each owners' exclusive use or occupancy. The Mas sought an order: (1) declaring that the AOAO violated the Bylaws by providing insurance coverage for common areas only; and (2) requiring the AOAO to (a) procure the requisite insurance coverage, and (b) reimburse the Mas for any costs incurred as a result of under-insurance. On April 13, 2009, the Mas filed a motion for summary judgment/summary adjudication and a hearing on the motion was held on April 24, 2009. The DCCA granted the motion and issued the "Hearings Officer's Findings of Fact, Conclusions of Law, and Order Granting Petitioners' Motion For Summary Disposition" (DCCA Decision), concluding that:[10]

> Article X, §2 is unambiguous and requires, at a minimum, that Respondent AOAO procure and maintain liability insurance coverage for the owners against claims for personal injury, death, and property damage arising on the premises. Respondents do not point to and the Hearings Officer cannot find any language in the By-Laws that authorizes Respondent AOAO to limit coverage to "liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy". On this record, the Hearings Officer must conclude that Respondent AOAO, *under its By-Laws as currently written*, is required to procure and maintain liability insurance that insures each apartment owner against claims of personal injury, death and property damage, including claims arising out of the ownership, maintenance or repair of that portion of the premises reserved for the owners' exclusive use and/or occupancy.

(Italics in original; underscore added for emphasis.)

---

[9] (...continued)
house rules . . . the other party in the dispute shall be required to participate in mediation.

(b) If a dispute is not resolved by mediation as provided in subsection (a), in addition to any other legal remedies that may be available, any party that participated in the mediation may file a request for a hearing with the office of administrative hearings, department of commerce and consumer affairs[.]

[10] Craig H. Uyehara served as the Hearings Officer in this case and issued the DCCA Decision.

The AOAO appealed the DCCA Decision to the circuit court on June 2, 2009. On June 16, 2009, the Mas filed a Motion to Dismiss the AOAO's appeal contending that dismissal was appropriate because the AOAO failed to comply with Hawai'i Rules of Civil Procedure (HRCP) Rule 72 in filing their appeal. The circuit court denied the Mas' Motion by minute order dated August 6, 2009. After holding arguments on the merits, the circuit court reversed the DCCA's Decision concluding that the DCCA clearly erred in interpreting the Bylaws which only required the AOAO to provide coverage for the common elements. The circuit court entered Judgment on August 5, 2010, and later filed an Amended Judgment on August 23, 2010. The Mas timely appealed the circuit court's decision to this court on August 25, 2010.

## II. STANDARD OF REVIEW

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which [the appellate] court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (1993) to the agency's decision.

HRS § 91-14, entitled "Judicial review of contested cases," provides in relevant part:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).

6

United Pub. Workers, AFSCME, Local 646, AFL-CIO, v. Hanneman, 106 Hawai'i 359, 363, 105 P.3d 236, 240 (2005) (brackets in original omitted) (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 416, 91 P.3d 494, 498 (2004)). "Pursuant to HRS § 91-14(g), an agency's conclusions of law are reviewed de novo." United Pub. Workers, 106 Hawai'i at 363, 105 P.3d at 240 (internal quotation marks and citation omitted). "A circuit court's conclusions of law are subject to *de novo* review." Paul's Elec. Serv., 104 Hawai'i at 420, 91 P.3d at 502.

### III. DISCUSSION

### A.

The crux of this appeal revolves around the interpretation of Article X, section 2 of the Bylaws. The Mas contend the Bylaws require the AOAO to provide insurance coverage for damages arising out of the use of areas in the Queen Emma Gardens reserved for the exclusive use or occupancy of the owner, including the owners' individual units. On the other hand, the AOAO contends the Bylaws only require them to provide insurance coverage to the unit owners for damages arising out of the use of the common elements.

Generally, interpretation of the bylaws, a contract between the apartment owners and an association of apartment owners[11], is a question of law which this court reviews de novo. Koga Eng'g & Const., Inc. v. State, 122 Hawai'i 60, 72, 222 P.3d 979, 991 (2010); Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984) ("As a general rule, the construction and legal effect to be given a contract is a question of law."). "[T]erms of a contract should be interpreted according to their plain, ordinary, and accepted use in common

---

[11] See Casumpang v. ILWU Local 142, 108 Hawai'i 411, 422, 121 P.3d 391, 402 (2005) (holding that "the constitution, rules and bylaws of an unincorporated association . . . constitute a contract between the members[.]"). King v. Chism, 632 S.E.2d 463, 465 (Ga. App. 2006) ("The condominium instruments, including the bylaws and the sales agreement, are a contract that governs the legal rights between the Association and unit owners."); but see Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc., 14 A.3d 284, 293 (Conn. 2011) (Vertefeuille, J., dissenting) (noting the difference between condominium bylaws and traditional contracts).

speech, unless the contract indicates a different meaning."
Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 108, 839
P.2d 10, 24 (1992) (internal quotation marks omitted); Hart v.
Ticor Title Ins. Co., 126 Hawai'i 448, 456, 272 P.3d 1215, 1223
(2012).

We must first determine whether the language of the
Bylaws is ambiguous. Wittig v. Allianz, A.G., 112 Hawai'i 195,
201, 145 P.3d 738, 744 (App. 2006) ("[T]he determination of
whether a contract contains ambiguous terms is a threshold
question of law for the court to decide."). The DCCA granted
summary judgment in favor of the Mas concluding the Bylaws
unambiguously required the AOAO to provide insurance coverage to
unit owners for areas under their exclusive use or occupancy.
The circuit court disagreed with the DCCA's conclusion and
concluded the Bylaws were ambiguous.

In determining whether an ambiguity exists, we are
constrained by the four corners of the document. Williams v.
Aona, 121 Hawai'i 1, 15, 210 P.3d 501, 515 (2009) (quoting United
Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc.,
113 Hawai'i 127, 140, 149 P.3d 495, 508 (2006)). "A contract
term or phrase is . . . ambiguous when it is capable of being
reasonably understood in more ways than one." Cho Mark Oriental
Food, Ltd. v. K & K Int'l, 73 Haw. 509, 520, 836 P.2d 1057, 1063-
64 (1992). The Bylaws state in relevant part:

> Section 2. Liability Insurance. The Association
> shall procure and maintain . . . a policy or policies
> (collectively, the "Policy") of liability insurance to
> insure the Board, the Association, each apartment owner, the
> Managing Agent, and other employees of the Association
> against claims for personal injury, death, property damage
> and such broader coverage as the Board shall determine
> arising out of the condition of the property or activities
> thereon[.]

(Emphases added.) The language of the Bylaws provides that the
Association is required to maintain insurance for "each apartment
owner" for claims "arising out of the condition of the property
or activities thereon." The Mas argue that "property" includes
areas reserved for the exclusive use or occupancy of the

8

individual apartment owners. The AOAO contends that "property" as used in this provision is restricted to the common elements of the condominium. The Bylaws provide no guidance either expressly or contextually to assist this court in determining the proper interpretation of the term. See Hart, 126 Hawai'i at 457, 272 P.3d at 1224 ("[A]mbiguity arises here simply because [property] is not defined in the [contract]."). We agree with the circuit court that the provision is ambiguous.[12] See Stewart v. Brennan, 7 Haw. App. 136, 143, 748 P.2d 816, 821-22 (1988).

"Where the terms in a contract are ambiguous, in order to ascertain the parties' intent the trier of fact may consider evidence extrinsic to the written contract, including evidence of the surrounding circumstances and the parties' subsequent conduct in construing the contract." Id. at 143, 748 P.2d at 821. Because construing an ambiguity requires a factual determination of the parties' intent, summary judgment is generally inapplicable to resolving such disputes. Hanagami, 67 Haw. at 364, 688 P.2d at 1145 ("The intent of the parties is a question of fact, and '[i]nasmuch as the determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable men might differ, summary judgment often will be an inappropriate means of resolving an issue of that character.'" (quoting Bishop Trust Co. v. Central Union Church, 3 Haw. App. 624, 628-29, 656 P.2d 1353, 1356 (1983)).

The Mas filed a motion for summary judgment with the DCCA on April 13, 2009. In support of their motion for summary

---

[12] Although not explicitly announced in the Order Reversing the DCCA Decision, the circuit court found the Bylaws to be ambiguous. In an oral ruling, the circuit court stated:

> With the existent language in the bylaws, both [parties'] positions could be argued because the language of the bylaws does not specify whether it's limited to common elements or to exclusive use . . . .
>
> In that sense, the Court looks at it as the language being ambiguous. The Court looks at then to determine what the bylaws intended by looking at the surrounding sections of bylaws, by looking at the condominium HRS statutes, by looking at Hawaii case law, and by looking at courts of other jurisdictions.

judgment, the Mas attached the relevant Bylaw sections, statutory provisions, and insurance policies to support their position. In opposition, the AOAO presented evidence related to the underlying incident and lawsuits involving the death of Gomes (pleadings, HPD reports, etc.), complete copies of the insurance policies, and the Declaration of Sue Salvio (Salvio), an insurance agent with Insurance Associates Inc. According to Salvio, only two insurance companies in Hawaiʻi wrote ISO CGL policies for condominiums at the time, and she had "never seen an insurance company . . . issue individual insurance policies to each owner of a condominium under the Association of Apartment Owners's ISO Commercial General Liability . . . policies." The Mas replied with the Declaration of William Souza (Souza), an insurance claims supervisor and vice president at Hawaiian Insurance Group. Souza's declaration established that an ISO CGL form could have been used to provide each apartment owner with coverage for their individual units by writing separate policies for each owner (rather than adding them as additional insureds).

The declarations of Salvio and Souza, provide conflicting evidence as to the feasibility of providing the type of insurance under dispute, which is relevant to the intent of the parties in adopting the Bylaws. See Stewart, 7 Haw. App. at 143, 748 P.2d at 821 ("The course of dealing between the parties and the custom and usage of the trade at the time are two of the surrounding circumstances which the trier of fact may consider [in determining the parties' intent]."). Because the intent of the parties was essential in resolving the ambiguity of the language of the Bylaws, summary judgment by the DCCA was inappropriate. Bishop Trust Co., 3 Haw. App at 629-30, 656 P.2d at 1357. The circuit court erred in not remanding this case to the DCCA for further proceedings to resolve this genuine issue of material fact as to the parties' intent.

**B.**

The Mas contend the circuit court erred in denying their Motion to Dismiss the AOAO's appeal. HRCP Rule 72 provides

10

the procedure for seeking judicial review from an agency determination. According to HRCP Rule 72(a) and 72(b), an aggrieved party has 30 days from the issuance of a decision by the DCCA to file a notice of appeal. The notice of appeal should name as appellees every party to the agency proceeding and the governmental body that issued the decision from which appeal is taken. See Jordan v. Hamada, 62 Haw. 444, 447-48, 616 P.2d 1368, 1371 (1980). "[W]ithin the same time provided for filing the notice of appeal or within such further time. . . as may be allowed by the court for good cause shown," the aggrieved party must file a designation of the record on appeal[13] (designation) and a statement of the case.[14] HRCP Rule 72(d) & 72(e). Certified copies of all three documents must be served upon the appellees. HRCP Rule 72(c), 72(d)(1), & 72(e).

---

[13] HRCP Rule 72(d)(1) provides:

> **(d) Record on appeal.**
>
> (1) Designation. The appellant shall, within the time provided for filing the notice of appeal or within such further time, not to exceed 30 days, as may be allowed by the court for good cause shown, prepare and present to the clerk of the circuit court a designation, which shall specify the papers, transcripts, minutes and exhibits which the appellant desires filed in the circuit court in connection with the appeal. The clerk, in the name and under the seal of the circuit court, shall endorse on the designation an order, directed to the official or body whose decision, order or action is appealed from, commanding the latter to certify and transmit such papers, transcripts, minutes and exhibits to the circuit court within 20 days of the date of the order or within such further time as may be allowed by the court. The clerk shall issue certified copies of such designation and order to the appellant for service upon the official or body whose decision, order or action is appealed from and for service upon any other appellee. The appellant shall serve certified copies of the designation and order and shall make due return of service thereof to the clerk of the circuit court.

[14] HRCP Rule 72(e) provides:

> **(e) Statement of case.** The appellant shall file in the circuit court concurrently with the filing of appellant's designation, a short and plain statement of the case and a prayer for relief. Certified copies of such statement shall be served forthwith upon every appellee. The statement shall be treated, as near as may be, as an original complaint and the provision of these rules respecting motions and answers in response thereto shall apply.

The DCCA issued its Decision on May 13, 2009, and the AOAO filed its notice of appeal with the circuit court on June 2, 2009, naming the Mas as appellees. The notice of appeal did not name the DCCA as an appellee. The AOAO filed their statement of the case, and designation on June 9, 2009. All three documents were filed within the time allowed under HRCP Rule 72. Subsequently, the AOAO served a certified copy of their notice of appeal on the Mas, but only served uncertified copies of the their designation and statement of the case on the Mas. The AOAO did not serve any of their documents on the Attorney General (on behalf of the DCCA).

On June 16, 2009, the Mas filed a Motion to Dismiss seeking the dismissal of the AOAO's appeal because the AOAO failed to (1) name the DCCA as an appellee in their notice of appeal; (2) serve their notice of appeal on the Attorney General; and (3) properly serve their designation and statement of the case on the Mas or the Attorney General. On July 28, 2009, while the Motion to Dismiss was still pending, the AOAO filed an amended designation and amended statement of the case. The circuit court held a hearing on the Mas' motion on August 5, 2009. At the hearing, the circuit court granted the AOAO leave to amend their notice of appeal. The AOAO submitted their amended notice of appeal on August 6, 2009, naming the DCCA as an appellee, and the circuit court denied the Mas' motion the same day by minute order.[15]

On appeal, the Mas argue that the circuit court erred in denying their Motion to Dismiss. Specifically, the Mas contend the AOAO's amended designation was void because it was filed outside of the allowable time, and the circuit court did not find good cause for the delay. See HRCP Rule 72(d)(1) (requiring the designation to be filed within the same time

---

[15] The Mas filed their notice of appeal to this court on August 25, 2010 and at that time a written order had not been entered denying their Motion to Dismiss. On September 8, 2010, two weeks after the Mas filed their notice of appeal, the circuit court entered the "Order Denying Appellees Tommy Wai Hung Ma and Sindy Sin Yee Ma's Motion to Dismiss Appeal With Prejudice" (Order Denying Motion to Dismiss).

allowed for filing the notice of appeal or within such further time as allowed by the court for "good cause shown" not to exceed 30 days).[16] We disagree and conclude the circuit court does not need to find good cause in this case where the original designation, although defective, was timely filed.

Although the AOAO initially failed to strictly comply with the requirements of HRCP Rule 72, the Hawai'i Supreme Court has recognized that the rules and statutes governing the right to appeal should be "liberally construed to uphold the right of appeal[.]" Jordan, 62 Haw. at 448, 616 P.2d at 1371 (internal quotation marks omitted). As such, HRCP Rule 72 is not "regarded as a road block to judicial review in any sense." Id. at 449, 616 P.2d at 1372. The AOAO's original notice of appeal, designation, and statement of the case were timely filed. However, the AOAO failed to list the DCCA as an appellee and failed to properly serve their documents. After realizing these deficiencies, the AOAO cured the defects by filing an amended notice of appeal, an amended designation, and an amended statement of the case, which the circuit court allowed. Because the AOAO's designation was timely filed and because the defects in the notice of appeal, designation, and statement of the case were not jurisdictional, the circuit court did not abuse its discretion in allowing the AOAO to amend these

## IV. CONCLUSION

The July 27, 2010 "Order Reversing the Hearings Officer's Findings of Fact, Conclusions of Law, and Order Granting Appellees/Petitioners Tommy Wai Hung Ma and Sindy Sin

---

[16] In their Motion to Dismiss, the Mas contend the circuit court did not have subject matter jurisdiction over the appeal, presumably because of the AOAO's failure to properly name the agency in the notice of appeal and/or serve the notice of appeal on the agency. Although the Mas do not argue jurisdiction on appeal, we note that the defects in the AOAO's notice of appeal are not jurisdictional defects. See Life of the Land v. Land Use Comm'n, 58 Haw. 292, 298, 568 P.2d 1189, 1194 (1977) (holding that failure to serve the notice of appeal on all required parties is not a jurisdictional defect which could not later be cured); see also Jordan, 62 Haw. at 445, 616 P.2d at 1370 (holding that the failure to include the name of the agency in the caption of the notice of appeal from an agency decision did not render the notice of appeal fatally defective).

Yee Ma's Motion for Summary Judgment/Summary Adjudication Filed on April 13, 2009, Filed on May 13, 2009," entered in the Circuit Court of the First Circuit is vacated. In all other respects, the August 23, 2010 Amended Judgment is affirmed and this case is remanded to the circuit court to remand to the DCCA for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, April 5, 2013.

On the briefs:

Stephen M. Shaw
for Appellees-
Petitioners/Appellants.

Keith K. Hiraoka
Shannon L. Wack
Jodie D. Roeca
(Roeca Luria Hiraoka)
for Appellants-
Respondents/Appellees.

Presiding Judge

Associate Judge

Associate Judge